**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JOSEPH TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:11-cv-1436-JMS-DKL |
| | ) | |
| CORIZON MEDICAL SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

Presently pending before the Court are multiple motions, including Defendants Corizon Medical Services ("Corizon"), Pharmacorr, and Dr. William Wolfe's Motion for Summary Judgment. [Dkt. 68.] *Pro se* plaintiff Joseph Taylor, an inmate at the Pendleton Correctional Facility ("Pendleton"), alleges in his operative complaint that the Defendants have violated 42 U.S.C. § 1983 and his Eighth Amendment right to be free from cruel and unusual punishment through the denial of adequate medical care under the United States Constitution. [Dkt. 53.]

**I.**

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

Because Taylor is proceeding *pro se*, he was notified of the nature of the Defendants' motion for summary judgment, of the proper manner in which to respond, and of the consequences of failing to respond properly. [Dkt. 69.] Taylor opposes the motion for summary judgment, and filed an affidavit in support of his position. [Dkt. 73-1.] Taylor subsequently

moved for a preliminary injunction, [dkt. 82], and filed a supplemental affidavit in support of that request and his opposition to the summary judgment motion, [dkt. 89].  The Court will not consider any portions of the affidavits that rest on hearsay or deal with matters not relevant to the claim on which this action has proceeded.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (emphasizing that the Court "may consider only admissible evidence in assessing a motion for summary judgment").

## II.
### BACKGROUND

The material facts are primarily undisputed, except as noted.  Corizon contracts with the Indiana Department of Correction ("IDOC") to provide medical care to prisoners in Indiana.  [Dkt. 71-2 at 1.]  For example, Corizon's Regional Medical Director, Dr. Michael Mitcheff, D.O., "hire[s] facility physicians, review[s] requests for non-formulary medications, review[s] requests for outside consultations, and make[s] alternative treatment suggestions, if appropriate, among other things."  [*Id.*]  Pharmacorr is a pharmacy that supplies medications ordered by providers within the IDOC.  [*Id.*]  Pharmacorr does not administer medical care, does not make medical decisions, and has no control or involvement in the decision as to which medications an inmate may receive.  [*Id.* at 2.]

Taylor has been incarcerated in various Indiana facilities since 1990.  [Dkt. 73-1 at 1.]  He is forty-nine-years old, [dkt. 73-1 at 1], and currently incarcerated at Pendleton, [dkts. 73-1 at 1; 20 at 2].  The parties dispute whether Taylor suffers from chronic irritable bowel syndrome ("IBS"), but making all reasonable inferences in Taylor's favor as this Court is required to do on summary judgment, the Court will assume that Taylor does, in fact, suffer from IBS.  [Dkt. 73-1 at 1.]  Even with that diagnosis, the primary symptom of Taylor's IBS is ongoing, chronic

constipation, which he has experienced for the twenty-three years that he has been incarcerated. [*Id.* at 3.]

Taylor has taken medications such as Fiber-Lax and Psyllium packets for years, [*id.*], and maintains that Psyllium is the most effective in relieving his chronic constipation, [dkt. 89 at 5]. Taylor contends that non-natural laxatives such as Bisacodyn and Docusate compound his condition and are not as effective. [Dkt. 73-1 at 3-4.]

Dr. Wolfe typically prescribed Taylor Fiber-Lax for his constipation. [Dkt. 71-1 at 2.] He contends that although he did not believe the medication was necessary since he did not believe Taylor's constipation was a serious medical condition, Taylor "has an inflated belief as to the seriousness of his constipation" and Dr. Wolfe "re-ordered the medications in an effort to appease Mr. Taylor." [*Id.*]

In June 2011, Fiber-Lax was removed from the IDOC formulary list of medications. [*Id.*] Inmates could still receive medications that are not on the formulary list if the medication was medically indicated for the inmate's condition; however, Dr. Wolfe did not believe that the long-term use of fiber or laxatives was medically indicated for Taylor. [*Id.*] Accordingly, in July 2011 Dr. Wolfe stopped prescribing Fiber-Lax to Taylor. [*Id.*] Taylor's bowel movements went from once daily to once per week after Dr. Wolfe stopped prescribing the medication. [Dkt. 73-1 at 4.]

Taylor contends that Dr. Wolfe reordered Fiber-Lax for him on certain occasions after it was removed from the formulary list, but that Dr. Wolfe told him the request was denied by Corizon's Regional Medical Director. [Dkt. 73-1 at 5.] Taylor further contends that nurse practitioners such as Janie Waldstein have continued to prescribe him Psyllium on certain

occasions, including as recently as March 2013, [dkt. 80 at 3], but that Dr. Wolfe has interfered with that course of treatment, [dkt. 89 at 4].

Natural fiber powder can be purchased from Pendleton's commissary for $6.25.  [Dkts. 71-3 at 1; 84-1 at 2.]  Taylor is aware of the available fiber supplement and alleges that the Defendants encouraged him to buy it himself.  [Dkt. 53 at 14.]  Dr. Wolfe attests that the commissary's natural fiber powder available is equivalent to what Taylor had been receiving from Dr. Wolfe, [dkt. 81-4 at 2], which Taylor does not dispute, [*see* dkt. 87 at 3-4, wherein Taylor states: "If Dr. Wolfe chooses to himself purchase the $6.25 bottle of 'fiber substitute' off of the inmate commissary, and then issue the same as a prescription to Taylor's chronic IBS, Taylor would of course not refuse any such prescribed course of treatment." (emphases deleted)].

Taylor contends that he is unable to afford the fiber supplement available in the commissary.  [Dkt. 87 at 4.]  Taylor's Pack Lists reveal his purchases at the prison commissary. [Dkt. 71-3 at 1.]  After Fiber-Lax was removed from the IDOC formulary list, Taylor purchased numerous items from the commissary including peanut butter, ramen noodles, oatmeal cream pies, coffee, deodorant, and lip balm.  [*See, e.g.*, dkt. 71-3 at 12 (August 2011 list spending $30.50), 13 (September 2011 list spending $52.88), 14 (March 2012 list spending $36.15).] Those spending habits have continued during this litigation.  [Dkt. 84-1 at 4 (March 2013 list spending $27.81 on items including oatmeal cream pies, strawberry preserves, toothpaste, and lotion), 5 (April 2013 list spending $19.60 on oatmeal cream pies and strawberry preserves).]

Defendants have moved for summary judgment on Taylor's federal claim.  [Dkt. 68.]  As part of his response, Taylor has moved for a preliminary injunction, asking the Court to require the Defendants to provide him with Psyllium packets, Fiber-Lax, or an equivalent natural alternative.  [Dkt. 82 at 5.]

## III.
### DISCUSSION

### A.  Applicable Law

Taylor asserts his Eighth Amendment claim pursuant to 42 U.S.C. § 1983, which "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) ("[C]onstitutional claims must be addressed under the most applicable provision.").

The treatment and the conditions of a prisoner's confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishments.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").  Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning that they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison officials to that condition.  *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted).

As to the second element, "[t]o show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King*, 680 F.3d at 1018-19 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson*, 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted). The Eighth Amendment does not, however, provide a right to "demand specific care" or "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

### B.  Taylor's Ability to Pay

The parties primarily focus on whether Taylor's constipation is a serious medical condition and, if it is, whether Dr. Wolfe was deliberately indifferent to that condition. After arguing the merits of those issues, the Defendants also contend that Taylor's commissary records reveal that he has the financial means to purchase fiber powder available at the commissary, should he choose to do so.  [Dkt. 70 at 15-16.]

Taylor concedes that the fiber supplement available at the commissary would be sufficient to relieve the constipation of which he complains.  [*See* dkt. 87 at 3-4 ("If Dr. Wolfe chooses to himself purchase the $6.25 bottle of 'fiber substitute' off of the inmate commissary, and then issue the same as a prescription to Taylor's chronic IBS, Taylor would of course not refuse any such prescribed course of treatment.") (emphases deleted)].  He contends, however, that he is unable to afford the available fiber supplement.  [Dkt. 87 at 4.]

Mr. Taylor provides no evidence supporting his contention that he cannot afford the available fiber supplement and, in fact, his commissary purchases show otherwise.  After Fiber-Lax was removed from the IDOC formulary list, Taylor continued to purchase numerous items from the commissary including peanut butter, ramen noodles, oatmeal cream pies, coffee, deodorant, and lip balm.  [*See, e.g.*, dkt. 71-3 at 12 (August 2011 list spending $30.50), 13 (September 2011 list spending $52.88), 14 (March 2012 list spending $36.15).]  Those spending habits have continued during this litigation.  [Dkt. 84-1 at 4 (March 2013 list spending $27.81 on items including oatmeal cream pies, strawberry preserves, toothpaste, and lotion), 5 (April 2013 list spending $19.60 on oatmeal cream pies and strawberry preserves).]   In light of this undisputed evidence, the Court finds that there is no issue of material fact regarding Taylor's ability to pay for the $6.25 fiber supplement available at the commissary.

### C.  Whether Defendants Can Require Taylor to Pay

The real question this litigation presents is whether the Defendants can require Taylor to purchase the medical remedy he seeks instead of providing it to him at no cost.

The Eighth Amendment does not provide a right to "demand specific care" or "the best care possible."  *Arnett*, 658 F.3d at 754.  The Seventh Circuit Court of Appeals has held that it is "now well established" that "the Eighth Amendment does not compel prison administrators to

provide cost-free medical services to inmates who are able to contribute to the cost of their care."
*Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012).  An inmate who "opt[s] to refuse treatment
rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven
though he was in pain until he received treatment, the delay in receiving care was of his own
making."  *Id.* at 1027 (affirming grant of summary judgment in favor of the defendant on
inmate's claim that required $2.00 co-payment for dental care violated Eighth Amendment).

Both district courts in Indiana have echoed the Seventh Circuit's holding in *Poole* in the
context of prescribed over-the-counter medications available for purchase at the prison
commissary.  Specifically, they have held that "[n]othing in the Eighth Amendment, which
prohibits certain punishment, requires a state to provide an inmate, free of charge, with a
necessary commodity that would not be free outside the prison walls and which the inmate has
the legal means to obtain."  *Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995); *see also
Hudgins v. DeBruyn*, 922 F. Supp. 144, 150 (S.D. Ind. 1996) (Tinder, J.) (agreeing with
conclusion from *Martin*).  Insisting that an inmate with sufficient funds use those funds to pay
for medical care, even for serious medical needs, "is neither deliberate indifference nor
punishment."  *Martin*, 880 F. Supp. at 615.  Therefore, "'a prison official violates the Eighth
Amendment by refusing to provide prescribed OTC medicine for a serious medical need only if
the inmate lacks sufficient resources to pay for the medicine.  If the inmate can afford the
medicine but chooses to apply his resources elsewhere, it is the inmate, and not the prison
official, who is indifferent to serious medical needs.'"  *Hudgins*, 922 F. Supp. at 150 (quoting
*Martin*, 880 F. Supp. at 615)).

Based on the cited case law, the Court concludes that the Defendants did not violate
Taylor's Eighth Amendment rights by refusing to prescribe the desired fiber supplement because

the undisputed evidence shows that Taylor had the financial means to obtain an adequate fiber supplement at the prison commissary. The parties primarily dispute whether Taylor's IBS and resulting constipation are a serious medical need, but even assuming that they are does not change the Court's conclusion. *Hudgins*, 922 F. Supp. at 150 (quoting *Martin*, 880 F. Supp. at 615) (holding "a prison official violates the Eighth Amendment by refusing to provide prescribed OTC medicine *for a serious medical need* only if the inmates lacks sufficient resources to pay for the medicine.") (emphasis added)). Any delay Taylor experienced in receiving medical care because he did not purchase the available fiber supplement with his sufficient commissary funds "was of his own making." *Poole*, 703 F.3d at 1027. For these reasons, the Court concludes that the Defendants are entitled to summary judgment on Taylor's Eighth Amendment claim.[1]

### D.  Remaining State Law Claims

In light of the Court's conclusion that the Defendants are entitled to summary judgment on Taylor's Eighth Amendment claim, no federal claims remain in this litigation. It is unclear whether Taylor's Amended Complaint raises Indiana state law claims. [Dkt. 53.] Out of an abundance of caution because Taylor may be alleging that the Defendants violated various provisions of the Indiana Constitution, [*see, e.g.*, *id.* at 12, 18], the Court will analyze whether to continue exercising supplemental jurisdiction over any state claims that Taylor asserts.

The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 129 S. Ct. 1862, 1866 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental

---

[1] In addition to the foregoing, the federal claims against Corizon and Pharmacorr are deficient because there is nothing in the evidentiary record to suggest that these entities have a custom or policy of denying inmates adequate medical care under the Eighth Amendment. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). Moreover, the parties apparently agree that Pharmacorr lacks the necessary personal involvement to be liable under § 1983. [Dkt. 78 at 6.] Thus, the federal claims against Corizon and Pharmacorr cannot survive.

10

jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). It is well-established that the usual practice is to dismiss the state supplemental claims without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Here, the relevant principles weigh in favor of the Court relinquishing supplemental jurisdiction over any state law claims Taylor is making. The parties have not developed any arguments regarding those claims; thus, the Court has not engaged on them and judicial economy would not be served by keeping them here. Moreover, to the extent Taylor cites the Indiana Constitution as the basis for his potential state law claims, [dkt. 53 at 12, 18], comity favors an Indiana state court deciding those constitutional claims. Finally, the Court finds no fairness or convenience concerns that weigh in favor of this Court retaining supplemental jurisdiction.

For these reasons, the Court, in its discretion, relinquishes supplemental jurisdiction over any state law claims Taylor asserts, 28 U.S.C. § 1367(c)(3); *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006) (acknowledging district court's discretion to decline jurisdiction over state law claims where all federal claims have been resolved). Therefore, this action will be remanded to the state court from which it was removed for resolution of any state law claims Taylor asserts.

11

## IV.
### CONCLUSION

The Court **DENIES** Taylor's motion for evidentiary hearing, [dkt. 80], because there are no material facts in dispute. To the extent he requests the Court to appoint him a medical expert, [*id.* at 5], that request is also **DENIED**, *see Brown v. United States*, 74 F. App'x 611, 614-15 (7th Cir. 2003) (holding that "no civil litigant, even an indigent one, has a legal right to [a court-appointed medical expert]"). The Court **GRANTS** the Defendants' motion for summary judgment on Taylor's Eighth Amendment claim. [Dkt. 68.] In light of that decision, Taylor's motion for preliminary injunction, [dkt. 82], and emergency motion for a ruling on the motion for preliminary injunction, [dkt. 91], are **DENIED AS MOOT**. To the extent Taylor asserts any state law claims against any of the Defendants, the Court relinquishes supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3). Judgment shall issue accordingly. The Clerk is directed to enclose a copy of the docket sheet for this matter when this entry is mailed to Taylor, pursuant to his request. [Dkt. 92.]

08/30/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

Joseph A. Taylor
DOC # 905002
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

All Electronically Registered Counsel